Our next case on calendar is Franz Haas v. Winebow, 25-4105. Each side will have 10 minutes. May it please the Court. My name is Eric Ambrell, and I'm here on behalf of Appellant Winebow. The appellee had to do four things under Article 4 of the New York Convention. They accomplished zero of those things. Everyone agrees that each of those four things was the burden of appellee. Your Honor, we have been accused of a couple of things, and I want to get that. I want to start right there, and that is we've been accused of grasping at straws, and we've been accused of gotcha. Your Honor, to be very blunt, we are grasping definitely at the plain terms of the Article 4 of the New York Convention and nothing more. We are grasping hard to the opinion by the United States Supreme Court in G.E. Electric that said specifically that it's the requirements, that these are requirements, not suggestions. We are absolutely grasping to Al Qarqani, the Ninth Circuit opinion, which stated and characterized Article 4 as mandatory. We are grasping to Section 201. I'm going to lay my cards on the table for you because you've got limited time. You need to persuade me that this is not the most frivolous appeal that I have seen in 23 years on the bench between sophisticated parties, because your argument is utterly medieval. It is form pleading taken to the nth degree. So I just wanted to put that out on the table. That will let you sort of decide how to use your time.  It's a question of it's the rule of law, and they are asking, directly, they are asking you to do nothing less than change the terms. What terms said it had to be done all at once, can't be amended? Where is there anything that says normal rules of amendment and letting people fix things don't apply? Well, you break it down. And, in fact, the drafters specifically addressed this, Your Honors, because in Article 4, the first two requirements are specifically shall at the time of the application. But when you get to the second two, the translations, which are different, they don't make that argument. At the time of application, the district court in Al-Qarqani specifically equated the petition to the application. And that's what happened. That is the application. And it makes it, actually, it makes it, the notion that there is anything other than an action to apply on its face the Article 4 requirements, there is not an argument to be made that those were not met on four bases. Counsel, usually these arguments come to us in a slightly different form. They usually come to us in sort of an argument about, excuse me, due process or something else. And usually in a due process type analysis, somebody's got to be able to show some kind of prejudice. I didn't see any argument in your brief about prejudice. Can you tell us how your client was prejudiced? I can tell. Let me address that directly. Number one, there is not a prejudice standard. This is de novo. Did they or did they not apply to, did they not, did they or did they not. So I understand. Your argument is we don't have to show prejudice. I understood that.  It is that we don't have to show prejudice. But if we delve into that standard, which is not the standard, certainly, certainly it is this lawlessness of are we or are we not. This is opening the door for, by the way, talk about what this would mean. This court in SETI says, okay, non-signatories can be part of this. So now let's talk about all the different. I guess you can argue, answer, but if you don't wish to answer my question, just go ahead and tell me you're not going to answer it. Is your client prejudiced? Tell me how he's prejudiced other than by the fact that they were allowed to amend after the first pleading. All sorts of prejudice. You're on. Let's let's let's let's start with. I didn't see anything in the brief, but if you want to give it to us now, I'd love to hear it. What are we going to do in the future? Existing disputes between the parties regarding the supply agreement. Future dispute. No, no, no. The question I think Judge Biby is asking is the week that went between or however long it was week, month, whatever, between when they first came to the court and when they amended. What prejudice did you have from it delaying a month or whatever period of time it was? That is a single argument of the four. The time of application has nothing to do with it, with the rules of arbitrariness and talk about prejudice. I have to walk around with those documents forevermore. This is how important it is. It is so important and crucial because now forevermore we have a document that the imprimatur of the United States, this court, is that it is the rules of arbitrariness. That's just one. Counsel, let me try one more time. Yes. Okay. We're just not communicating here.  How was Weinbow, your client, prejudiced between the time that the first application was filed and they filed the corrected application? What is the prejudice in that time period? Specifically to the at the time of application regarding that one argument, I don't have a prejudice argument as to the at the time of application other than, Your Honor, that I still will rest on the prejudice that we were not given the legal right or the lawful right to not have an award confirmed without those being met. That is prejudice, Your Honor. I take it your answer to my colleague's question is none. For that particular argument, whether it happens right there or down the line, now I can see if all of a sudden at the time of application that's just going to get erased and that means you can do it at a later time, you can do it after. That's changing Article IV. We are changing Article IV. Given that that delay between the original filing and the amended filing didn't cause you prejudice, is there any reason to think that that type of three weeks or whatever would cause anyone else prejudice that would mean that we would think that this convention was written to not allow the three weeks and the fixing? Well, it wasn't three weeks. Whatever it was. Whatever period you just conceded has no prejudice. That's why not only on this issue, just the single at the time of application, not the translation issues that are separate issues and we just don't know.  I'm going to hit you. The question is why would we interpret any of these rules to not allow amendment? Your client didn't face any harm from the delay between the fixing. You just conceded that. It doesn't seem like anyone else would either. So why in the world would anyone write a convention to say you only have one shot to get it perfectly right the first time? On that particular issue, the reason you would do it is because we've had a conversation about can you even have jurisdiction? Why would they write the convention to not allow there to be an amendment? Because they need to know at the fore. Why? Because they need to, for the exact reason that they need to know whether or not this is an international arbitration. 201 helps us here. Well, so if you don't know and you need to wait for amendment, I mean, a lot of times we say we don't think we have jurisdiction on this complaint, so you leave to amend. And then when you amend, we find out, okay, now we have jurisdiction. Why can't it be just like that? From a practical standpoint, because we need to know at the fore to see whether it falls in from a first course. Does this fit within the parameters? What are we doing here? Why? If they say, okay, right now it doesn't, you don't have what you need, but then you get another chance, and then when you do, if there's no prejudice in the interim, what's the problem with letting them amend? It's a procedural issue that makes a lot of sense. Why would we wait until the last possible moment? We could be at a point of nearing trial, a later amendment, and now all of a sudden we find out this was all a big waste of time. We never got into the four corners of, is this even an Article IV? And that's why there's even been this issue, which Judge Miller said, and Al-Qarqani in his oral argument, he asked the question, why does it matter whether it's jurisdictional or merits? But what Al-Qarqani says, it's a merits issue. We cannot get around, we cannot get around the fact that that's what it says, and we cannot get around that there is no way around it to say, if we get rid of shall, and we say the translations are, you just don't have to have translations, we can have Italian, we can have Latin. The translation here is very understandable as I read it. Is there anything that you couldn't understand in this translation? The answer is I don't understand an entire page of the alleged translation. The back is in Italian, allegedly. I don't have to even know what language. It is littered with these terms that have not been translated. It's not inter alia. It's not lasagna. It's not something, and if I'm standing here as Cicero, if I'm standing here as Thomas Aquinas, speaks Italian and writes in Latin, it doesn't matter. The parties have to deal with this in other litigation and other cases forever more. And your honors, whether I know it or not doesn't matter either, because in SETI, all this got expanded to non-signatories, which means now in a future case, I have to walk around with documents, and I can't represent. You've used up your time. Let's hear from the other side. I guess you're the other side. Good morning, your honors. I'm Janet Gusdorf for the appellee, Franz Haas. I don't want to belabor a point, and I'm open to any questions that might be troubling this court. And otherwise, I would just like to remind the court that Article III also has mandatory language of shall. Each contracting state shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory of the award, where the award is relied on. And so that is also mandatory language that incorporates the federal rules of civil procedure. And unlike the cases in which Weinbo is trying to analogize, here Weinbo fully participated in the arbitration. There's never been any dispute whatsoever that there was a valid agreement to arbitrate, that there's any issues with the arbitration under the Article V. There's no substantive challenge to any translation issue that really could have any possible confusion. Weinbo knows that they weren't proceeding under the ICC rules of arbitrariness, and it's just an absurdity. Without any substantive challenge. And I mean, it seems like he's saying there's Latin, but I think it was, sorry, he's saying it's Italian, but I think it's Latin. I don't know how to say it, but pactum renovandi, which is a Latin phrase. We use Latin phrases. So when he's talking now about a full page of Italian, do you know what he's talking about? Or is he just talking about that phrase in Latin? I am not sure what page he is referring to. I'm happy to respond if he would. But the substance has been submitted even with the first petition as well. Because as we mentioned, not only with the initial petition was the full arbitration award presented with the signatures and the translation, the certified translation, but within that award was also the agreement to arbitrate in paragraph 13. So even accepting the sort of absurd premise that you get a one-shot deal here, Franz Haas satisfied that, and the district court reasoned that intelligently. So unless the court has other questions, I'll submit. Thank you. Thank you both sides. This case is submitted.
judges: HAWKINS, BYBEE, FRIEDLAND